UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PNC BANK, N.A.,

    Plaintiff,

v.

ANDY'S EXCAVATION LLC, et al.,

    Defendants.
_____/

Case No. 1:24-cv-1154

Hon. Hala Y. Jarbou

## OPINION

Plaintiff PNC Bank, N.A. (successor by merger to PNC Equipment Finance, LLC), sued Defendant Andy's Excavation LLC for breach of contract, replevin, and turnover of collateral, and sued Defendants Andrew Lahaie and Charles Lahaie for breach of guaranty. (Compl., ECF No. 1.) Charles Lahaie filed an answer to PNC's complaint (ECF No. 6) and has been dismissed from the case (ECF No. 33). But neither Andy's Excavation nor Andrew Lahaie answered the complaint after being served with a copy. The clerk of the court entered default against Andy's Excavation and Lahaie. (ECF No. 17.) PNC now moves for default judgment. (ECF No. 29.) Andy's Excavation and Andrew Lahaie did not respond to the motion. The Court will grant the motion in part and deny it in part for the reasons set out below.

### I. BACKGROUND

PNC is a national banking association with its principal place of business in Delaware. (Compl. ¶ 1.) Andy's Excavation is a Michigan limited liability company with its principal place of business in Michigan. (*Id.* ¶ 2.) Andrew Lahaie is a citizen of Michigan. (*Id.* ¶ 3.)

In September 2020, Andy's Excavation and PNC entered into a loan and security agreement (Agreement, ECF No. 1-2) in which PNC agreed to finance Andy's Excavation's

purchase of a 2022 Bobcat T76 compact track loader. (Compl. ¶ 9.) In return, Andy's Excavation agreed to make seventy-two consecutive monthly payments of $1,563.48 plus applicable taxes. (*Id.* ¶ 10.) Andrew Lahaie signed the agreement as a guarantor. (*Id.* ¶ 13.) PNC perfected its priority security interest in the track loader by filing a UCC-1 financing statement. (*Id.* ¶¶ 11–12.)

On March 1, 2024, Andy's Excavation defaulted on the agreement by failing to make the payment due in March and all subsequent payments. (*Id.* ¶ 15.) Seven months later, PNC sued Andy's Excavation and the Lahaies to recover the outstanding principal, amounts due and payable, all remaining payments through the end of the agreement's term at the discounted interest rate of 3 percent per annum, and interest and other amounts payable under the agreement. (*Id.* ¶¶ 16–21.) Additionally, PNC claimed it was entitled to $390.85 in late charges, $500.00 of site visit and repossession fees, and prejudgment interest at the rate of 18 percent per annum from the date of default until the date of judgment. (*Id.*) In addition, PNC sought attorneys' fees, costs, and possession of the track loader. (*Id.*) PNC's complaint claims at least $80,607.32 in damages under the agreement. (*Id.* ¶ 29.)

After the PNC filed its complaint, the track loader was returned to PNC and sold for $46,100.00, resulting in a $35,398.17 outstanding balance on the loan. (Br. in Supp. of Default J. ¶¶ 25–27, ECF No. 30.) PNC totals the prejudgment interest as $20,288.61 as of August 1, 2025, and the attorneys' fees and costs at $7,370.49; thus, PNC seeks a default judgment in the amount of $63,057.27. (*Id.*)

## II. ANALYSIS

### A. Forum and Governing Law

At the threshold, the Court must determine if PNC properly invokes this Court's jurisdiction. *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard

to every case."); *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010) ("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of [a] default judgment."). This Court has jurisdiction under 28 U.S.C. § 1332 because PNC is diverse from both Defendants and the amount in controversy exceeds $75,000.[1] (*See* Compl. ¶¶ 1–4, 7.) The Court has personal jurisdiction over Defendants because Andy's Excavation is a Michigan limited liability company with its principal place of business in Michigan and Andrew Lahaie is a citizen of Michigan. (*See id.*) And this Court is a proper venue under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to PNC's claims occurred in this district. (*Id.* ¶ 9.)

But that does not resolve the question of whether this Court is *the* proper venue for adjudicating this lawsuit, and, if it is, which law to apply: the agreement between PNC and Andy's Excavating specifies that any disputes relating to the agreement will be litigated in a Pennsylvania state or federal court and that the agreement is to be interpreted and enforced according to Pennsylvania law. (Agreement, PageID.23.) Forum-selection clauses constitute a form of waiver by the contracting parties of objections to the validity of the specified forum.[2] These clauses are enforceable in federal courts "under the common-law doctrine of 'forum non conveniens.'" *VCST Int'l B.V. v. BorgWarner Noblesville*, 142 F.4th 393, 400 (6th Cir. 2025).

---

[1] PNC's complaint alleges damages north of $75,000.00. (*See* Compl. ¶ 24.) But PNC now seeks judgment in the amount of $63,057.27. That PNC's claimed damages fall below the amount-in-controversy minimum does not deprive this Court of diversity jurisdiction under section 1332. *See Sellers v. O'Connell*, 701 F.2d 575, 578 (6th Cir. 1983) ("The amount in controversy for federal diversity jurisdiction purposes is determined as of the time the action is commenced." (cleaned up)). Subsequent events that change the amount in controversy "do not oust the district court's jurisdiction once it has attached." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938). Here, PNC pleaded $80,607.32 in damages in good faith; it was only the repossession of the truck loader after the complaint was filed that sent the amount in controversy below the jurisdictional threshold.

[2] Sachs, *The Forum Selection Defense*, 10 Duke J. Const. L. & Pub. Pol'y 1, 7–8 (2014).

In this circuit, a court confronted by a forum-selection clause must first determine whether it is "applicable to the claims at issue, mandatory, valid, and enforceable." *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 216 (6th Cir. 2021). If it is, the "clause will have 'controlling weight in all but the most exceptional cases.'" *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 310 (6th Cir. 2024) (quoting *Boling v. Prospect Funding Holdings*, 771 F. App'x 562, 568 (6th Cir. 2019)). This "strong presumption in favor of enforceability" can be overcome only if

> (1) the clause was obtained by fraud, duress, or other unconscionable means; (2) the designated forum would ineffectively or unfairly handle the suit; (3) the designated forum would be so seriously inconvenient that requiring the plaintiff to bring suit there would be unjust; or (4) enforcing the forum selection clause would contravene a strong public policy of the forum state.

*Lakeside Surfaces*, 16 F.4th at 219–20. If the clause is deemed enforceable, the forum agreed to by the parties should hear the case unless it is the "unusual" one in which public interests favor derogating from the forum-selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 64 (2013). Like any other application of forum non conveniens, the question of the applicability and enforceability of a forum-selection clause can be raised by a federal court "on its own accord." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009); *see Hyundai Merch. Marine Co. v. ConGlobal Indus.*, No. 2:15-cv-01562, 2015 WL 13841411, at *4 (D.S.C. Nov. 4, 2015) (collecting cases).

Under Michigan law,[3] the forum-selection clause in the agreement applies to PNC's claims in the instant suit. The clause, which channels "all disputes under this loan" into the "jurisdiction

---

[3] "'[W]hether the claims and parties involved in [a] suit are subject to [a] forum selection clause' is a question of scope . . . distinct from the 'enforceability' of the clause." *Firexo*, 99 F.4th at 331 (Larsen, J., concurring in part). Because the question of scope is interpretive in character, and because the interest in uniform rules for interpreting forum-selection clauses among the federal courts is arguably weaker than the interest in uniform criteria for their enforcement, *see id.* at 323–24 (majority opinion), the forum state's law (including its choice-of-law rules) determines if a forum-selection clause applies to a contractual dispute, *see id.* at 327. Michigan courts hold that forum-selection clauses are interpreted according to the law of the forum state without reference to the local law selected by a choice-of-law provision. *See Barshaw v. Allegheny Performance Plastics*, 965 N.W.2d 729, 755 (Mich. Ct. App. 2020). Although the Michigan cases do not appear to distinguish between the applicability and enforceability in the same

4

and venue of . . . the Eastern District of Pennsylvania or state courts in Montgomery County, Pennsylvania" (Agreement, PageID.23), is mandatory in nature. *See Race Winning Brands, Inc. v. Crawford*, 601 F. Supp. 3d 279, 286 (N.D. Ohio 2022). The Court is unaware of any ground that would render the clause invalid, or of any of the circumstances that would render the clause unenforceable are present in this case. Finally, none of the public-interest factors that courts in this circuit consider when determining whether another forum is better suited to adjudicating a lawsuit, *see Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 500 (6th Cir. 2016), weigh against enforcing the clause. Absent some contrary consideration, the forum-selection clause should be honored.

That consideration is supplied by the fact that both PNC and Andy's Excavation appear to have waived their right to enforce the forum-selection clause. Just because the Court can evaluate the effect of the forum-selection clause sua sponte does not mean it is obligated to enforce it. The existence of the clause does not of its own force deprive this Court of jurisdiction or render it an improper venue. *Firexo*, 99 F.4th at 310. The right to enforcement of a forum-selection clause is deemed waived by a party that "has taken actions inconsistent with it." *Wachovia Bank N.A. v. EnCap Golf Holdings*, 690 F. Supp. 2d 311, 328 (S.D.N.Y. 2010) (cleaned up); *cf. Boling v. Prospect Funding Holdings*, 771 F. App'x 562, 570 (6th Cir. 2019) (holding that right to enforce forum-selection clause can be forfeited).

---

manner as federal courts do, the Court predicts, *see Conlin v. Mortg. Elec. Registration Sys.*, 714 F.3d 355, 358–59 (6th Cir. 2013) (explaining the "*Erie* guess"), that a Michigan court confronted by the question would regard the forum-selection clause in the loan agreement at issue in this case applicable to PNC's breach-of-contract claims. Michigan statute law directs courts to honor an agreement "that an action on a controversy shall be brought only in another state," Mich. Comp. Laws. § 600.745(3), and the forum-selection clause declares itself applicable to "all disputes under this loan" (ECF No. 1-2, PageID.23). It is evident that PNC's "action" concerns a "controversy" that fits comfortably within the scope of the forum-selection clause. *Cf. Tariq v. Tenet Healthcare Corp.*, No. 356904, 2022 WL 880629, at *5 (Mich. Ct. App. Mar. 24, 2022) (relying on "plain terms" of arbitration agreement to determine its scope).

5

It is fairly clear that PNC cannot invoke the forum-selection clause to attack the validity of a default judgment entered by this Court in its favor. A party raising contractual claims in a forum that differs from the one specified by the contract whose enforcement is sought has given adequate indication that it intends to waive the benefit of litigating in the forum it bargained for. *See Kettler Int'l v. Starbucks Corp.*, 55 F. Supp. 3d 839, 850–51 (E.D. Va. 2014); *cf. Se. Power Grp. v. Vision 33, Inc.*, 855 F. App'x 531, 535–36 (11th Cir. 2021) (defendant who filed Rule 12(b)(6) motion without seeking dismissal based on forum-selection clause waived right to invoke clause).

The same holds true for a party that defaults on a lawsuit, which courts in this circuit and beyond have treated as a waiver of any of the party's objections to the propriety of a forum. *See MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 108 (E.D.N.Y. 2014); *United States v. Derrico*, No. 13-15154, 2015 WL 753320, at *5 (E.D. Mich. Feb. 23, 2015); *Novatel, Ltd. v. Infinitbox Internacional S.A. de C.V.*, No. SA-12-cv-186, 2012 WL 12931526, at *2 (W.D. Tex. Oct. 23, 2012); *Certain Underwriters at Lloyd's v. Alkabsh*, No. 09-2711, 2011 WL 938407, at *2 (W.D. Tenn. Mar. 15, 2011). This reasoning is especially persuasive when the plaintiff is foregoing the contractually specified forum to seek a default judgment in the district in which the absent defendant resides. That distinguishes the instant case from most suits in which a motion for default judgment was denied or a default judgment was vacated because the court adjudicating the litigation was not the one specified by a forum-selection clause. *See Baldwin v. Blackground-Interscope Recs. LLC*, No. 19-cv08923, 2023 WL 6161986, at *3 (S.D.N.Y. Sept. 21, 2023) (collecting cases); *cf. Dahman v. Embassy of Qatar*, 815 F. App'x 554, 558 (D.C. Cir. 2020) (default judgment against Qatari government vacated because of clause designating Qatar as mandatory arbitral forum). *But see NeighborCare of N.H. v. New Hope Healthcare Sys.*, No. 13-cv-14, 2013 WL 573908, at *4 (D.N.H. Oct. 21, 2013) (finding that motion for default judgment

6

on breach-of-contract claim brought in forum other than one provided for by mandatory forum-selection clause was legally insufficient); *Mane Ventures v. Equestrian Int'l LLC*, No. 24-80332-cv, 2025 WL 1191154, at *2 (S.D. Fla. Mar. 18, 2025) (denying motion for default judgment on breach-of-contract claims because of forum-selection clause apparent "on the face" of contract). Finally, the fact that the forum-selection clause at issue here also includes an agreement that Andy's Excavation "waive any defense based on forum non conveniens" (Agreement, PageID.23) without limiting that waiver to defenses against litigation in Pennsylvania further militates in favor of finding Andy's Excavation to have waived its right to enforce the clause. Under the circumstances presented by the instant case, the Court is satisfied that it would not be improper to entertain the merits of PNC's default judgment motion.

### B. Default Judgment

Federal Rule of Civil Procedure 55(a) empowers courts to enter default judgment against defendants who did not plead or otherwise defend against an action. Default judgment must be entered by the clerk of the court under a narrow set of circumstances: the damages sought must be a sum certain or one that is easily computable, *Conetta v. Nat'l Hair Care Ctrs.*, 186 F.R.D. 262, 268 (D.R.I. 1999), *aff'd*, 236 F.3d 67 (1st Cir. 2001); the defendant must not have entered an appearance, *Anderson v. Taylorcraft, Inc.*, 197 F. Supp. 872, 873 (W.D. Pa. 1961); and they must be legally capable and not serving in the military, *Broad. Music, Inc. v. Whiskey Stop Bar & Grill*, No. 5:23-cv-1889, 2024 WL 943322, at *3 (N.D. Ohio Mar. 5, 2024).

Entry by the court is prescribed in all other cases. Once default is entered, courts treat the defendant as having admitted the complaint's well-pleaded allegations. *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citing *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007)). The court must weigh the factors articulated by the Sixth Circuit in *Russell v. City of Farmington Hills* before entering judgment: "(1) possible prejudice to the plaintiff; (2)

7

the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) possible disputed material facts; (6) whether the default was due to excusable neglect; and (7) the preference for decisions on the merits." 34 F. App'x 196, 198 (6th Cir. 2002).

### 1. Merits of the claims and sufficiency of the complaint

The second and third *Russell* factors relate to the merits of PNC's claims and the sufficiency of its complaint, so the Court will consider these factors together.

PNC raises claims for breach of contract, breach of guaranty, claim and delivery (replevin), and turnover of collateral against Defendants. Taking the factual allegations as true, the Court finds that PNC's complaint states a valid claim against Andy's Excavation for breach of contract and an equally valid claim for breach of guaranty against Lahaie. PNC's replevin and turnover-of-collateral claims, by contrast, are moot.

*Breach of contract—the agreement.* Under Pennsylvania law,[4] a plaintiff states a breach of contract claim if "there was a contract, the defendant breached it, and plaintiffs suffered damages from the breach." *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010). PNC alleges that the agreement was formed by an offer, acceptance, and legal consideration. (*See* Compl. ¶¶ 9–11.) PNC alleges that it fulfilled its obligations under the agreement when it tendered $100,225.00 to Andy's Excavation for the purchase of the track loader. (*See id.*; Agreement, PageID.23–24.) PNC alleges that Andy's Excavation breached the agreement by failing to make all seventy-two consecutive monthly payments of $1,563.48 plus applicable taxes. (Compl. ¶ 15.) Taking these allegations as true, the Court finds that PNC has stated a sufficient and meritorious breach of contract claim against Andy's Excavation for failure to pay back the track-loader loan.

---

[4] Because the Court concludes that Michigan's choice-of-law rules dictate that the loan agreement's choice-of-law clause (ECF No. 1-2, PageID.23) be honored, *see Martino v. Cottman Transmission Sys.*, 554 N.W.2d 17, 21 (Mich. Ct. App. 1996), the Court will evaluate PNC's breach-of-contract claims according to Pennsylvania's local law.

*Breach of Contract—personal guaranty.* PNC's allegations also render Lahaie liable for breach of the guarantor agreement. (*See id.* ¶¶ 13, 15–16; ECF No. 1-4, PageID.31.) Because that agreement is a contract, the same analysis for breach of contract applies. PNC alleges that Lahaie defaulted under the guaranty agreement by failing to make the loan payments when they became due. (Compl. ¶¶ 15–16, 23.) Accepting the allegations in the complaint as true, PNC states a prima facie breach-of-contract claim against Lahaie for failing to guarantee Andy's Excavation's payments on the track-loader loan.

*Claim and delivery.* Claim and delivery is "Michigan's statutory version of the common-law claim of replevin." *Novak v. Federspeil*, 140 F.4th 815, 825 (6th Cir. 2025).[5] To succeed on a claim-and-delivery action, a plaintiff must prove that defendants unlawfully took or detained goods or personal property to which plaintiff has a right. *See* Mich. Comp. Laws § 600.2920; *Sutton Leasing, Inc. v. Veterans Rideshare, Inc.*, 468 F. Supp. 3d 921, 938 (E.D. Mich. 2020). After PNC filed its complaint, it regained possession of the track loader (Br. in Supp. of Default J. ¶¶ 25–27), rendering its replevin claim moot.

*Turnover of collateral.* Finally, PNC's turnover of collateral claim[6] under 13 Pa. C.S. § 9609 is moot because PNC concedes that the track loader was returned to PNC and sold. (*Id.*)

### 2. Prejudice to the plaintiff

Having found that PNC has stated sufficient and meritorious claims, the Court must next determine whether PNC would suffer prejudice if its motion was denied. PNC initiated this suit

---

[5] The Court is unaware of a Michigan case determining what law applies to a replevin claim on property that is the subject of a contract with an effective choice-of-law provision. Because the Court deems the replevin claim moot, it need not decide this issue.

[6] PNC also brought a turnover-of-collateral claim under Michigan law in the alternative in case the Court decided that Michigan law applied to the claim. Mich. Comp. Laws § 440.9609. That claim, if it does not fail by virtue of the choice-of-law provision in the loan agreement, is moot for the same reason as the Pennsylvania turnover-of-collateral claim.

in November 2024, and the alleged breaches began in March 2024.  (Compl. ¶ 13.)  Taking the allegations as true, Andy's Excavation and Andrew Lahaie have been in breach for more than six months.  (*See id.*)  They have made no effort to appear or defend this suit.  For these reasons, the Court finds that this factor weighs in favor of default judgment.

### 3. Amount of money at stake

Next, the Court considers the amount of money at stake.  PNC claims damages of $63,057.27.  (Br. in Supp. of Default J. ¶¶ 25–27.)  PNC's total award, if granted, would put PNC in as good a position as it would have been but for the breach.  *See Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 565 (6th Cir. 2012).  This factor weighs in favor of default judgment.

### 4. Possible disputed material facts

As for this factor, Andy's Excavation and Andrew Lahaie have not placed any material facts in dispute because they have failed to appear or otherwise defend against this action.  Thus, this factor weighs in favor of default judgment.

### 5. Excusable neglect

Like the previous factor, this Court cannot attribute Andy's Excavation and Andrew Lahaie's default to excusable neglect because they have failed to appear or otherwise defend in this action despite proper service of process.  This factor weighs in favor of default judgment.

### 6. Preference for decision on the merits

As a final consideration, the Court must account for the "strong policy of favoring a trial on the merits."  *United States v. Real Prop. Commonly Known as 8771 Lake Rd.*, 818 F. Supp. 199, 201 (W.D. Mich. 1992) (citing *Shepard Claims Serv. v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986)).  By its nature, default judgment conflicts with merit-based decisions. *See United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983).  But in cases such as this, where the defaulters have shown no interest in pursuing a decision on the merits,

it is appropriate to consider the need for judicial efficiency and the interests of PNC, which has actually appeared before the Court. There are no mitigating factors that Andy's Excavation or Andrew Lahaie has articulated in this case that weigh against default judgment. Thus, the Court will resolve this case through default judgment. Accordingly, default judgment shall be issued against Andy's Excavation and Lahaie.

### C. Damages

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (cleaned up). Instead, the Court must "conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Id.* (cleaned up). According to the agreement, PNC claims that Andy's Excavation and Andrew Lahaie owe PNC an outstanding balance of $35,398.17 as of August 1, 2025, plus prejudgment interest of $20,288.61 as of August 1, 2025, for a total of $55,686.78. (Br. in Supp. Default J. ¶¶ 25–27.) PNC also claims attorneys' fees and costs of $7,370.49. (*Id.*)

As of today, Andy's Excavation and Andrew Lahaie owe PNC fifty-five payments of $1,563.48 for the track loader discounted to present value at 3 percent. PNC reaches a figure of $80,607.32 owed in total based on those parameters. (Compl. ¶ 16.) It is unclear how PNC reached the $80,607.32 figure set out in the complaint, as the bank did not submit an affidavit or other evidence explaining its math. The Court conducted its own calculation, premised on the assumption that the first payment was due on October 1, 2022, since the agreement was entered in late September (Compl. ¶ 9), and arrived at $80,688.77 owed. Because it is reasonably certain that PNC is entitled to at least $80,607.32, the Court will adopt PNC's lower figure for the unpaid installments.

In addition to the unpaid loan installments, PNC claims it is entitled to $390.85 in late charges, as well as site visit and repossession fees of $500.00. (Compl. ¶¶ 17, 19.) As for late

11

fees, the agreement provides: "[f]or any payment which is not received within 10 days after its due date, you agree to pay a late charge equal to the higher of 5% of the amount due or $35.00 (not to exceed the maximum amount permitted by law), as reasonable collection costs." (Agreement, PageID.24.) The Court is unsure how PNC totals only $390.85 in late fees (again, it provides no evidence); the Court's calculation is much higher. Yet according to the agreement, PNC is certainly entitled to $390.85; thus, that amount will be awarded. As for site visit and repossession fees, the agreement allows PNC to collect "costs [it] incur[s] to enforce [its] rights against" Defendants. (*Id.*, PageID.25.) PNC fails to provide any evidence that it incurred $500.00 in site visit and repossession fees; therefore, PNC fails to prove such damages with reasonable certainty. After subtracting the $46,100 recouped by PNC from the sale of the truck loader (Br. in Supp. Default J. ¶ 25), PNC has proved $34,898.17 in damages with reasonable certainty.

PNC also asserts that it is entitled to prejudgment interest of $20,288.61. (*Id.*) The agreement provides that "any late payment or non-payment of any past due amount will accrue interest at . . . 18% per annum." (Agreement, PageID.25.) So under the agreement, PNC is entitled to at least $14,509.32. The Court will award PNC prejudgment interest at that rate starting from March 1, 2024, until the date of the Court's order. PNC will also be awarded postjudgment interest at the applicable statutory rate from the date of the Court's order until the entire judgment is satisfied.[7]

Finally, PNC also claims it is entitled to attorneys' fees and costs under the agreement, which is correct. (Agreement, PageID.24-25.) But the Court must determine whether PNC's claimed fees and costs are reasonable. *See Goos v. Nat'l Ass'n of Realtors*, 68 F.3d 1380, 1386

---

[7] Though PNC did not explicitly request postjudgment interest, the Court is required to grant it to PNC. *See Bricklayers' Pension Tr. Fund v. Taiariol*, 671 F.2d 988, 989 (6th Cir. 1982) ("This provision [28 U.S.C. § 1961] mandates the imposition of post-judgment interest, thus removing the award of such interest from the discretion of the District Court." (citations omitted)).

(D.C. Cir. 1995) (noting that "litigation is not an exact science").  "In seeking an award of attorney's fees, the prevailing party bears the burden of proving that the amount sought is reasonable." *Betancourt v. Indian Hills Plaza LLC*, 87 F.4th 828, 831 (6th Cir. 2023) (citation omitted).  "To evaluate when the moving party has done so, a district court calculates a baseline 'lodestar' amount." *Id.* (citing *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986)).  This calculation turns on two inputs. *Id.*  First "is the number of hours worked, which equates to those hours the prevailing attorneys 'reasonably expended.'" *Id.* (citing *Rivera*, 477 U.S. at 568).  Second "is a reasonable hourly rate, which derives from the 'prevailing market rates' in the relevant community." *Id.* (citing *Rivera*, 477 U.S. at 568; *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)).  The Court multiplies the two inputs—"hours [×] hourly rate"—to reach the lodestar amount. *Id.*  "Where the party seeking the attorney fees has established that the number of hours and rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)).

PNC seeks to collect $7,370.49 in attorneys' fees and costs.  (Br. in Supp. Default J. ¶ 26.)  Lisa Hall and Kelly Shefferly attach an affidavit of their respective rates but fail to explain how many hours they expended on this matter.  (*See* Bill of Costs in Supp. of Mot. Default J., ECF No. 30-4, PageID.133–34.)  Thus, the Court cannot find with reasonable certainty that PNC is entitled to $5,220.99 in attorney fees and costs on behalf of Lisa Hall and Kelly Shefferly's supposed work.  Randall Woolley attaches an affidavit of his hourly rate and the hours expended on this matter; he avers that he spent 8.2 hours on this matter and charges an hourly rate of $295.00 for a total of $2,149.50.  (*See id.*, PageID.135–36.)  The Court finds that rate and number of hours expended to be reasonable.  PNC fails to provide any support for costs it expended.  The Court

13

will award PNC the $2,149.50 in fees it paid for the work of Woolley, but it denies the remaining $5,220.99 in attorneys' fees and associated costs.[8]  Hall and Shefferly may file a properly substantiated motion for attorneys' fees and costs under Rule 54(d)(2).

### III. CONCLUSION

For these reasons, PNC's Motion for Default Judgment will be granted in part and denied in part.  The Court will grant PNC default judgment on its breach of contract claim against Andy's Excavation and breach of personal guaranty against Andrew Lahaie, monetary damages arising from the agreement, attorneys' fees, and pre- and postjudgment interest.  PNC's requests for default judgment on its claim-and-delivery and turnover-of-collateral claims, as well as its claim for costs, will be denied.

An order will enter consistent with this Opinion.

Dated: October 6, 2025               /s/ Hala Y. Jarbou
                                     HALA Y. JARBOU
                                     CHIEF UNITED STATES DISTRICT JUDGE

---

[8] This denial is without prejudice to PNC's submitting a substantiated bill for taxable costs, *see* 28 U.S.C. § 1920, to the clerk of the Court.